## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
## COURT FILE NO.:

Lisa M. Carlson,

        Plaintiff,

v.

CSC Credit Services, Inc.;
Equifax Information Services, LLC;
Experian Information Solutions, Inc.;
Trans Union, LLC;
HSBC Bank Nevada, N.A.;
Wells Fargo Bank, N.A.;
Phoenix Management Systems, Inc.;
Debt Recovery Solutions, LLC; and
Jane Doe a/k/a Ms. Scurry

        Defendants.

**<u>COMPLAINT</u>**
**<u>WITH JURY TRIAL DEMAND</u>**

## <u>PRELIMINARY STATEMENT</u>

1.    This action for damages is based on Defendants' false reporting on Plaintiff's credit reports and failures to follow reasonable procedures and failures to conduct reasonable investigations with respect to such information; and Debt Recovery Solutions and its employee's unfair debt collection practices.

## PARTIES

2.  Plaintiff Lisa M. Carlson is natural person who resides in the city of Minneapolis, County of Hennepin, State of Minnesota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

3.  Defendant CSC Credit Services, Inc., ("CSC") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

4.  Defendant Equifax Information Services, LLC, ("Equifax"), is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

5.  Defendant Experian Information Solutions, Inc., ("Experian") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

6.  Defendant Trans Union, LLC, ("Trans Union") is a credit bureau doing business in Minnesota and is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

7.  Defendant HSBC Bank Nevada, N.A. ("HSBC") does business in Minnesota and is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

8.  Defendant Wells Fargo Bank, N.A., ("Wells Fargo") does business in Minnesota and is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2.

9.      Defendant Phoenix Management Systems, Inc., ("Phoenix") does business in Minnesota, is a "furnisher" as that term is used in 15 U.S.C. § 1681s-2, and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

10.     Defendant Debt Recovery Solutions, LLC, ("DRS") does business in Minnesota and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

11.     Defendant Jane Doe, who goes by "Ms. Scurry" and whose real full name is presently unknown to Plaintiff, is a natural person employed by Defendant DRS and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

## JURISDICTION AND VENUE

12.     Because this case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., jurisdiction of this Court arises under 28 U.S.C. § 1331, and supplemental jurisdiction for state law claims arises under 28 U.S.C. § 1367.

13.     Venue is proper in this Court because a substantial part of the claim arose in Minnesota, and all Defendants "reside" in Minnesota, as that term is used in 28 U.S.C. § 1391.

## FACTUAL ALLEGATIONS

14.     Defendants confused Plaintiff with another person named Lisa Carlson.

15. Defendant Phoenix attempted to collect on a debt allegedly owed originally to Doctor Frank Y. Wei ("the Dr. Wei debt" or "the Phoenix account").

16. The Dr. Wei debt was primarily for personal, family or household purposes and was therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

17. Plaintiff was not responsible for the Dr. Wei debt.

18. Defendant Phoenix communicated false credit information on Plaintiff to Trans Union in connection with the collection of the Dr. Wei debt.

19. Phoenix's reporting of the Dr. Wei debt to Trans Union was an attempt to collect that debt.

20. On or around December 9, 2008, Plaintiff disputed numerous false entries on her credit report – including an HSBC account, two Wells Fargo accounts, and the Phoenix account – to Trans Union.

21. In her December 2008 letter to Trans Union, Plaintiff explained, "There is another Lisa Marie Carlson who lives in Minneapolis, as I do, and our social security numbers are only 1 digit off of each others.  Mine ends in 9318 and hers ends in 1318.  She has many delinquent debts that I am getting blamed for.  Our credit has gotten completely merged together and now my family and I are getting harassed with calls and letters from debt collectors.  . . .  Please let me know what else I can do to help sort all of this out as this is seriously affecting my life."

22. In her December 2008 letter to Trans Union, Plaintiff also notified Trans Union of the other Lisa Carlson's phone number.

23. Trans Union notified HSBC of Plaintiff's December 2008 dispute.

24. In the alternative, Trans Union failed to notify HSBC of Plaintiff's December 2008 dispute.

25. Trans Union notified Wells Fargo of Plaintiff's December 2008 dispute.

26. In the alternative, Trans Union failed to notify Wells Fargo of Plaintiff's December 2008 dispute.

27. Trans Union notified Phoenix of Plaintiff's December 2008 dispute.

28. In the alternative, Trans Union failed to notify Phoenix of Plaintiff's December 2008 dispute.

29. Trans Union notified numerous other furnishers of Plaintiff's December 2008 dispute.

30. Several furnishers ("the December 2008 deleting furnishers") responded to Trans Union that their respective accounts should be deleted from Plaintiff's file.

31. CSC received copies of the December 2008 deleting furnishers' responses to Trans Union indicating that their respective accounts should be deleted from Plaintiff's file.

32. CSC failed to promptly delete from Plaintiff's file all of the accounts that the December 2008 deleting furnishers indicated should be deleted from Plaintiff's file.

33.   Equifax received copies of the December 2008 deleting furnishers' responses to Trans Union indicating that their respective accounts should be deleted from Plaintiff's file.

34.   Equifax failed to promptly delete from Plaintiff's file all of the accounts that the December 2008 deleting furnishers indicated should be deleted from Plaintiff's file.

35.   Defendants CSC and Equifax share the same database.

36.   CSC and Equifax are each responsible for following reasonable procedures to assure maximum possible accuracy whenever they prepare consumer reports from information in their shared database.

37.   Experian received copies of the December 2008 deleting furnishers' responses to Trans Union indicating that their respective accounts should be deleted from Plaintiff's file.

38.   Experian failed to promptly delete from Plaintiff's file all of the accounts that the December 2008 deleting furnishers indicated should be deleted from Plaintiff's file.

39.   Plaintiff received investigation results from Trans Union dated January 17, 2009.

40.   Trans Union's January 17, 2009, investigation results indicated that the disputed HSBC account would not be removed from Plaintiff's file.

41.   The association of the disputed HSBC account with Plaintiff was false.

42.     Trans Union's January 17, 2009, investigation results indicated that the disputed Wells Fargo accounts would not be removed from Plaintiff's file.

43.     The association of the disputed Wells Fargo accounts with Plaintiff was false.

44.     Trans Union's January 17, 2009, investigation results indicated that the Phoenix account would not be removed from Plaintiff's file.

45.     The association of the Phoenix account with Plaintiff was false.

46.     Plaintiff's January 17, 2009, Trans Union credit report did not indicate that the Phoenix account was disputed.

47.     Trans Union's January 17, 2009, investigation results indicated that multiple other false items that Plaintiff had disputed would not be removed from Plaintiff's file.

48.     In or around February 2009, Plaintiff again disputed numerous false entries on her credit report – including the same HSBC account, the same two Wells Fargo accounts, and the same Phoenix account – to Trans Union.

49.     In her February 2009 dispute to Trans Union, Plaintiff again explained that she had been confused with another Minnesota woman with the same name and a similar Social Security Number.

50.     Trans Union notified HSBC of Plaintiff's February 2009 dispute.

51.     In the alternative, Trans Union failed to notify HSBC of Plaintiff's February 2009 dispute.

52.     Trans Union notified Wells Fargo of Plaintiff's February 2009 dispute.

53.  In the alternative, Trans Union failed to notify Wells Fargo of Plaintiff's February 2009 dispute.

54.  Trans Union notified Phoenix of Plaintiff's February 2009 dispute.

55.  In the alternative, Trans Union failed to notify Phoenix of Plaintiff's February 2009 dispute.

56.  Plaintiff received investigation results from Trans Union dated March 25, 2009.

57.  Trans Union's March 25, 2009, investigation results indicated that the disputed HSBC account would not be removed from Plaintiff's file.

58.  Trans Union's March 25, 2009, investigation results indicated that the disputed Wells Fargo accounts would not be removed from Plaintiff's file.

59.  Trans Union's March 25, 2009, investigation results indicated that the Phoenix account would not be removed from Plaintiff's file.

60.  Plaintiff's March 25, 2009, Trans Union credit report did not indicate that the Phoenix account was disputed.

61.  On April 20, 2009, Plaintiff yet again disputed numerous false entries on her credit report – including the same HSBC account, the same two Wells Fargo accounts, and the same Phoenix account – to Trans Union.

62.  In her April 2009 dispute to Trans Union, Plaintiff yet again explained that she had been confused with another Minnesota woman with the same name and a similar Social Security Number.

63.  Trans Union notified Wells Fargo of Plaintiff's April 2009 dispute.

64.   In the alternative, Trans Union failed to notify Wells Fargo of Plaintiff's April 2009 dispute.

65.   Plaintiff received investigation results from Trans Union dated April 25, 2009.

66.   Trans Union's April 25, 2009, investigation results indicated that one of the disputed Wells Fargo accounts would not be removed from Plaintiff's file.

67.   Trans Union furnished numerous consumer reports on Plaintiff to entities that had no permissible purpose for Plaintiff's consumer report, including without limitation to Defendant DRS in September 2009.

68.   Defendants DRS and Doe attempted to collect from Plaintiff on a debt allegedly owed originally to T-Mobile ("the T-Mobile debt" or "the DRS account").

69.   The T-Mobile debt was primarily for personal, family or household purposes and was therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

70.   Plaintiff was not responsible for the T-Mobile debt.

71.   Defendant DRS reported the DRS account to Trans Union.

72.   Plaintiff obtained her Trans Union credit report dated December 27, 2009.

73.   In addition to the remaining Wells Fargo account, multiple other items not belonging to Plaintiff, including the DRS account, newly appeared on Plaintiff's December 27, 2009, Trans Union credit report.

74.   Defendant DRS sent Plaintiff multiple letters attempting to collect the T-Mobile debt from Plaintiff.

75.   Plaintiff called Defendant DRS to ask how she could get the DRS account cleared off her credit report.

76.   A representative of DRS told Plaintiff to fax DRS a copy of her credit report with the DRS account on it and a copy of her social security card with all but the last four digits blacked out.

77.   On April 5, 2010, Plaintiff faxed DRS a copy of her credit report with the DRS account on it and a copy of her social security card with all but the last four digits blacked out.

78.   With her April 5, 2010, fax to DRS, Plaintiff included a written notice that she refused to pay the T-Mobile debt, that she wished DRS to cease further communications with her, that the T-Mobile debt belonged to a different Lisa Carlson, and that DRS should go after the other Lisa Carlson instead.

79.   DRS received Plaintiff's April 5, 2010, fax.

80.   Later that day, DRS, through Defendant Jane Doe, telephoned Plaintiff and left a message.

81.   Within an hour, Plaintiff called Jane Doe back.

82.   Jane Doe answered Plaintiff's call and immediately began yelling at Plaintiff.

83.   Jane Doe accused Plaintiff of not paying her bills.

84.   Jane Doe accused Plaintiff of lying.

85.   Jane Doe accused Plaintiff of tampering with the numbers on her social security card.

86.    When Plaintiff tried to explain the situation, Jane Doe kept interrupting Plaintiff.

87.    Jane Doe hung up on Plaintiff.

88.    Jane Doe is a manager for DRS.

89.    In a letter dated April 13, 2010, DRS further communicated with Plaintiff in an attempt to collect the debt from Plaintiff.

90.    In or around April 2010, Plaintiff yet again disputed numerous false entries on her credit report – including the remaining Wells Fargo account and the DRS account – to Trans Union.

91.    In her April 2010 dispute to Trans Union, Plaintiff yet again explained that she had been confused with another Minnesota woman with the same name and a similar Social Security Number.

92.    Trans Union notified numerous furnishers of Plaintiff's April 2010 dispute.

93.    Several furnishers ("the April 2010 deleting furnishers") responded to Trans Union that their respective accounts should be deleted from Plaintiff's file.

94.    Experian received copies of the April 2010 deleting furnishers' responses to Trans Union indicating that their respective accounts should be deleted from Plaintiff's file.

95.    Experian failed to promptly delete from Plaintiff's file all of the accounts that the April 2010 deleting furnishers indicated should be deleted from Plaintiff's file.

96.    Plaintiff obtained her May 19, 2010, Experian credit report.

97.   Plaintiff's May 19, 2010, Experian credit report contained numerous items that did not belong to Plaintiff.

98.   Plaintiff's May 19, 2010, Experian credit report contained multiple accounts that the December 2008 deleting furnishers, the April 2010 deleting furnishers, or other furnishers had notified Experian to delete from Plaintiff's file.

99.   Experian furnished numerous consumer reports on Plaintiff to entities that had no permissible purpose for Plaintiff's consumer report, including without limitation to Gurstel Staloch Chargo on December 16, 2008, and January 26, 2010.

100.   CSC received copies of the April 2010 deleting furnishers' responses to Trans Union indicating that their respective accounts should be deleted from Plaintiff's file.

101.   CSC failed to promptly delete from Plaintiff's file all of the accounts that the April 2010 deleting furnishers indicated should be deleted from Plaintiff's file.

102.   Equifax received copies of the April 2010 deleting furnishers' responses to Trans Union indicating that their respective accounts should be deleted from Plaintiff's file.

103.   Equifax failed to promptly delete from Plaintiff's file all of the accounts that the April 2010 deleting furnishers indicated should be deleted from Plaintiff's file.

104.   Plaintiff obtained her June 1, 2010, CSC credit report.

105.   Plaintiff's June 1, 2010, CSC credit report contained numerous items that did not belong to Plaintiff.

106.   Plaintiff's June 1, 2010, CSC credit report contained multiple accounts that the December 2008 deleting furnishers, the April 2010 deleting furnishers, or other furnishers had notified CSC and Equifax to delete from Plaintiff's file.

107.   CSC and/or Equifax furnished numerous consumer reports on Plaintiff to entities that had no permissible purpose for Plaintiff's consumer report, including without limitation to Messerli & Kramer on December 11, 2008, and September 4, 2009.

108.   Plaintiff obtained her Trans Union credit report dated May 19, 2010.

109.   Multiple items not belonging to Plaintiff newly appeared in Plaintiff's May 19, 2010, Trans Union credit report.

110.   In a letter dated June 18, 2010, Plaintiff yet again disputed numerous false entries on her credit report to Trans Union.

111.   In her June 18, 2010, letter to Trans Union, Plaintiff again explained, "There is another Lisa Marie Carlson who lives in Minneapolis, as I do, and our social security numbers are only 1 digit off of each others.  Mine ends in 9318 and hers ends in 1318.  She has many delinquent debts that I am getting blamed for.  Our credit has gotten completely merged together and now my family and I are getting harassed with calls and letters from debt collectors.  . . .  Please let me know what else I can do to help sort all of this out as this is seriously affecting my life."

112.   In her June 18, 2010, letter to Trans Union, Plaintiff notified Trans Union of her own complete Social Security Number, Date of Birth, phone number and current

address, and the other Lisa Carlson's complete Social Security Number, Date of Birth, and phone number.

113. In her June 18, 2010, letter to Trans Union, Plaintiff also explained that she was not the Lisa Carlson who lived in Plymouth, Minnesota, she was not the Lisa Carlson also known as Lisa M. Germaine, and she was not the Lisa Carlson with a spouse named David.

114. In her June 18, 2010, letter to Trans Union, Plaintiff also stated, "You are on notice that the other Lisa Carlson and I have the same name and similar SSNs. I therefore expect that in addition to now removing the items from my credit report that are not mine, you will be careful in the future to avoid putting her credit items on my credit reports and vice versa."

115. Plaintiff obtained her Trans Union credit report dated November 10, 2010.

116. A Hennepin County judgment not belonging to Plaintiff newly appeared in Plaintiff's November 10, 2010, Trans Union credit report.

117. Public records for the Hennepin County judgment show that the defendant was Lisa Carlson of Plymouth, Minnesota.

118. Public records for the Hennepin County judgment show that the co-defendant was "Germain, David" of Plymouth, Minnesota.

119. Plaintiff made multiple disputes to various consumer reporting agencies of various items belonging to the other Lisa Carlson, including without limitation the disputes specified herein.

14

120.    On December 9, 2008, U.S. Bank denied Plaintiff's application for credit due at least in substantial part to the inaccurate information in Plaintiff's CSC credit report.

121.    On May 18, 2009, Citibank denied Plaintiff's application for credit due at least in substantial part to the inaccurate information in Plaintiff's Experian credit report.

122.    As a result of Defendants' actions and omissions, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.


## TRIAL BY JURY

123.    Plaintiff is entitled to and hereby requests a trial by jury.


## CAUSES OF ACTION

### COUNT I:
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### CSC, EQUIFAX, EXPERIAN, AND TRANS UNION

124.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

125.    Defendants CSC, Equifax, Experian, and Trans Union willfully and/or negligently violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's consumer reports.

126.   As a result of CSC's, Equifax's, Experian's, and Trans Union's violations of § 1681e(b), Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.  Plaintiff is therefore entitled to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

127.   CSC's, Equifax's, Experian's, and Trans Union's actions and omissions were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

128.   Plaintiff is entitled to recover costs and attorney's fees from Defendants CSC, Equifax, Experian, and Trans Union pursuant to 15 U.S.C. §§ 1681n and 1681o.

## COUNT II:
## VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
## 15 U.S.C. § 1681i
## TRANS UNION

129.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

130.   Defendant Trans Union willfully and/or negligently violated 15 U.S.C. § 1681i in multiple ways including without limitation by failing to conduct a reasonable reinvestigation of Plaintiff's dispute(s) and by failing thereafter to appropriately delete or modify information in Plaintiff's file.

131.   As a result of Trans Union's violations of § 1681i, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses,

detriment to her credit rating and emotional distress.  Plaintiff is therefore entitled

to recover actual damages pursuant to 15 U.S.C. §§ 1681n and 1681o.

132.    Trans Union's actions and omissions were willful, rendering it liable for punitive

damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

133.    Plaintiff is entitled to recover costs and attorney's fees from Defendant Trans

Union pursuant to 15 U.S.C. §§ 1681n and 1681o.


### COUNT III:
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681s-2(b)
### HSBC, WELLS FARGO, AND PHOENIX

134.    Plaintiff incorporates by reference all preceding paragraphs as though fully stated

herein.

135.    Defendants HSBC, Wells Fargo, and Phoenix willfully and/or negligently violated

15 U.S.C. § 1681s-2(b) by failing to conduct reasonable investigations upon

receiving notice of Plaintiff's dispute(s) from one or more consumer reporting

agencies, and/or by failing to appropriately report the results of their

investigations, and/or by failing to appropriately modify, delete, and/or block the

information.

136.    As a result of HSBC's, Wells Fargo's, and Phoenix's violations of § 1681s-2(b),

Plaintiff has suffered actual damages not limited to credit denials, out-of-pocket

expenses, detriment to her credit rating and emotional distress.   Plaintiff is

therefore entitled to recover actual damages under 15 U.S.C. §§ 1681n and 1681o.

137.  HSBC's, Wells Fargo's, and Phoenix's actions and omissions were willful, rendering them liable for punitive damages and/or statutory damages pursuant to 15 U.S.C. § 1681n.

138.  Plaintiff is entitled to recover costs and attorney's fees from Defendants HSBC, Wells Fargo, and Phoenix pursuant to 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV:**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10)**
**PHOENIX**

139.  Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

140.  Defendant Phoenix's foregoing actions and omissions in connection with its attempts to collect the alleged Dr. Wei debt violated numerous and multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

141.  As a result of Phoenix's violations of the FDCPA, Plaintiff has suffered actual damages not limited to credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.  Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

142.  Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendant Phoenix $1,000 in statutory damages and reasonable attorney's fees and costs.

18

**COUNT V:**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. §§ 1692b(2), 1692b(3), 1692c(b), 1692c(c), 1692d, 1692d(2), 1692e, 1692e(2),**
**1692e(7), 1692e(10), 1692f, and 1692f(1)**
**DRS AND JANE DOE**

143.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

144.   Defendants DRS and Jane Doe's foregoing actions and omissions in connection with their attempts to collect the alleged T-Mobile debt violated numerous and multiple provisions of the FDCPA, including without limitation 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), and 1692e(10).

145.   As a result of Phoenix's violations of the FDCPA, Plaintiff has suffered actual damages not limited to credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.  Plaintiff is therefore entitled to recover actual damages under 15 U.S.C. § 1692k.

146.   Under 15 U.S.C. § 1692k, Plaintiff is also entitled to recover from Defendant Phoenix $1,000 in statutory damages and reasonable attorney's fees and costs.


**COUNT VI:**
**CREDIT DEFAMATION**
**CSC, EQUIFAX, EXPERIAN, TRANS UNION,**
**HSBC, WELLS FARGO, AND PHOENIX**

147.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

148.   Defendants' foregoing actions and omissions, including but not limited to reporting errors on Plaintiff's credit reports, constitute credit defamation.

149.   Defendants' foregoing actions and omissions were intentional and malicious.

150.   As a result of Defendants' intentional and malicious credit defamation, Plaintiff has suffered actual damages, including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.

**COUNT VII:**
**NEGLIGENCE**
**ALL DEFENDANTS**

151.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

152.   Defendants' foregoing actions and omissions constitute a breach of Defendants' duty to Plaintiff.

153.   Defendants' foregoing actions were intentional and malicious.

154.   As a result of Defendants' intentional and malicious negligence, Plaintiff has suffered actual damages including without limitation credit denials, out-of-pocket expenses, detriment to her credit rating and emotional distress.

**COUNT VIII:**
**INVASION OF PRIVACY BY INTRUSION UPON SECLUSION**
**DRS AND JANE DOE**

155.   Plaintiff incorporates by reference all preceding paragraphs as though fully stated herein.

156.   Defendants intentionally interfered, physically or otherwise, with Plaintiff's solitude, seclusion and/or private concerns or affairs.

157.   Defendants intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting a debt.

158.   Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, and/or private concerns or affairs.

159.   The intrusions by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

160.   As a result of such invasions of privacy, Plaintiff has suffered actual damages, including emotional distress.


**WHEREFORE,**

Plaintiff prays that judgment be entered against these Defendants for:

   a.) Plaintiff's actual damages;

   b.) Punitive and/or statutory damages against CSC, Equifax, Experian, Trans Union, HSBC, Wells Fargo, and Phoenix pursuant to 15 U.S.C. § 1681n;

c.) Reasonable attorney's fees and costs against CSC, Equifax, Experian, Trans Union, HSBC, Wells Fargo, and Phoenix pursuant to 15 U.S.C. §§ 1681n and/or 1681o;

d.) Statutory damages against Phoenix, DRS, and Doe pursuant to 15 U.S.C. § 1692k;

e.) Reasonable attorney's fees and costs against Phoenix, DRS, and Doe pursuant to 15 U.S.C. § 1692k; and

f.) Such other and further relief as may be just and proper.

Dated:       12/6/10                           **GOOLSBY LAW OFFICE, LLC**

By:           s/John H. Goolsby
John H. Goolsby, #0320201
2021 East Hennepin Avenue, Suite 195
Minneapolis, MN 55413
Telephone:  (612) 331-8700
jgoolsby@goolsbylawoffice.com
**Attorney for Plaintiff**